2013-1429

# United States Court of Appeals
# for the Federal Circuit

---

NISSIM CORP.,

*Plaintiff-Appellant,*

*v.*

CLEARPLAY, INC.,
MATTHEW JARMAN, and LEE JARMAN,

*Defendants-Appellees.*

---

*Appeal from the United States District Court for the Southern District
of Florida in case no. 04-CV-21140, Senior Judge Paul C. Huck.*

---

## BRIEF FOR DEFENDANTS-APPELLEES

ERIC BRIAN STORM
THE STORM LAW FIRM, PLLC
11701 Bee Caves Road
Suite 221
Austin, TX 78738
(512) 505-2331
eric.storm@thestormlawfirm.com

*Counsel for Defendants-Appellees*

SEPTEMBER 12, 2013

---

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees ClearPlay Inc., Matthew Jarman, and Lee Jarman certifies the following on this 12th day of September, 2013:

1.  The full names of every party or amicus represented by me are ClearPlay Inc., Matthew Jarman, and Lee Jarman;

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is not applicable;

3.  There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of ClearPlay, Inc.; and

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

    Stoel Rives LLP; David Jordan; David Mortenson; Baker Hostetler LLP; David Wood; Lee & Amtzis, P.L.; Thomas Meeks; Long & Paige, LLP; G. Stephen Long; Reid A. Paige; Page G. Crowther; Sheftall & Torres, P.A.; Brian M. Torres; Scott D. Sheftall; King & Spalding; R. William Beard, Jr.; The Storm Law Firm PLLC; Eric B. Storm.

            */s/ Eric B. Storm*
            Eric B. Storm

i

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF AUTHORITIES .......................................................... iv

STATEMENT OF RELATED CASES ........................................ viii

JURISDICTIONAL STATEMENT ................................................ 1

INTRODUCTION .......................................................................... 2

STATEMENT OF THE CASE ........................................................ 4

STATEMENT OF FACTS ............................................................... 8

    A.   ClearPlay's Rise, Nissim's Infringement Suit, and
          the Parties' Settlement .......................................................... 8

    B.   ClearPlay's Attempts to Comply with Nissim's
          Editing "Specifications" ...................................................... 10

    C.   Nissim's Threats to ClearPlay's Business Partners,
          ClearPlay's Attempt to Resolve Compliance
          Disputes through ADR, and Nissim's Success in
          Maintaining the Case in Federal Court ........................... 12

    D.   The Federal Circuit's *Nissim I* Opinion and the
          District Court's Denial of "Summary
          Determination" .................................................................. 17

    E.   Consensus That the Eight Phase I Filters Did Not
          Constitute a Representative Sample Set .......................... 20

    F.   The Federal Circuit's *Nissim II* Opinion and the
          District Court's Denial of Relief on Remand ................... 23

SUMMARY OF THE ARGUMENT ............................................. 25

ARGUMENT .......................................................27

   I.   The Court Lacks Jurisdiction to Address the Two Interlocutory Orders Complained of by Nissim. ..............27

      A.  The District Court's Withdrawal of Jurisdiction in Favor of ADR Is Not Appealable. ................................................27

      B.  Nissim Cannot Establish—and Does Not Even Argue—Any Exception to the Final-Judgment Rule........................................................32

   II.  Given the Extensive Unresolved Factual Issues, the District Court Did Not Err in Denying "Summary Determination."...............................38

      A.  The District Court Correctly Applied *Nissim I*, Which Requires Fact Determinations on the Issue of Substantial Compliance..............................38

      B.  ClearPlay Uses the Specifications. ...........................44

   III.  The District Court Did Not Err in Denying Nissim's Motion for Relief on Remand.............................47

      A.  Whether ClearPlay Intended to Make a Judicial Admission or Stipulation is a Question of Fact. ........................................48

      B.  ClearPlay Did Not Intend to Waive its Rights. ........49

      C.  Even if ClearPlay Were Incorrect in Its Legal Theory of the Case, the District Court Did Not Err in Denying Summary Relief. ..............54

CONCLUSION...................................................56

CERTIFICATE OF SERVICE ...................................58

CERTIFICATE OF COMPLIANCE ............................60

iii

# TABLE OF AUTHORITIES

*Page(s)*

## *Cases*

*Advanced Software Design Corp. v. Fiserv, Inc.*,
  641 F.3d 1368 (Fed. Cir. 2011) ..................................................... 33

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................. 35, 36

*Catlin v. United States*,
  324 U.S. 229 (1945) ...................................................................... 28

*Chapman v. AI Transport*,
  229 F.3d 1012 (11th Cir. 2000)..................................................... 45

*ClearPlay, Inc. v. Nissim Corp.*, No. 07-81170-CIV,
  2011 U.S. Dist. Lexis 99154 (S.D. Fla. Sept. 2, 2011) ................. 12

*Gerber Garment Technology, Inc. v. Lectra Sys., Inc.*,
  916 F.2d 683 (Fed. Cir. 1990) ................................................ 33, 34

*Glaros v. H.H. Robertson Co.*,
  797 F.2d 1564 (Fed. Cir. 1986) .................................................... 33

*Glass v. United of Omaha Life Ins. Co.*,
  33 F.3d 1341 (11th Cir. 1994)....................................................... 51

*Gould, Inc. v. United States*,
  67 F.3d 925 (Fed. Cir. 1995) ........................................................ 28

*In re Nissim Corp.*, No. 973,
  428 F.App'x 981 (Fed. Cir. 2011).................................. x, 19, 20, 43

*Ins. Corp. of Ireland v. Compagnie des Bauxites*,
  456 U.S. 694 (1982) ...................................................................... 32

*Int'l Air Response v. United States*,
  302 F.3d 1363 (Fed Cir. 2002) ..................................................... 31

*Johnson v. Zerbst,*
  304 U.S. 458 (1938) ..................................................... 48

*Killeen v. Office of Pers. Mgmt.,*
  558 F.3d 1318 (Fed. Cir. 2009) ..................................... 28

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ..................................................... 31

*Lermer Germany GmbH v. Lermer Corp.,*
  94 F.3d 1575 (Fed. Cir. 1996) ................................. 33, 34

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,*
  439 F.3d 1335 (Fed. Cir. 2006) ..................................... 33

*MacDonald v. Gen. Motors Corp.,*
  110 F.3d 337 (6th Cir. 1997) .............................. 48, 49, 55

*Matter of Garfinkle,*
  672 F.2d 1340 (11th Cir. 1982) ..................................... 49

*Media Techs. Licensing, LLC v. Upper Deck Co.,*
  334 F.3d 1366 (Fed. Cir. 2003) ................................. 28, 37

*New Amsterdam Cas. Co. v. Waller,*
  323 F.2d 20 (4th Cir. 1963) ........................................... 55

*Nissim Corp. v. ClearPlay, Inc.,* No. 2009-1327,
  374 F.App'x 987 (Fed. Cir. 2010) ........................... *passim*

*Nissim Corp. v. ClearPlay, Inc.,* No. 2012-1188,
  499 F.App'x 23 (Fed. Cir. 2012) ................... x, 23, 24, 56

*Parker Brothers v. Tuxedo Monopoly, Inc.,*
  757 F.2d 254 (Fed. Cir. 1985) ....................................... 33

*Prickett v. Mansfield,*
  257 Fed. App'x 288 (Fed. Cir. 2007) ............................. 55

*Schafer v. Dep't of Interior,*
  88 F.3d 981 (Fed Cir. 1996) ......................................... 28

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) .................................................. 1, 27

*Standard Fire Ins. Co. v. Knowles*,
   133 S. Ct. 1345 (2013) ............................................................. 48, 53

*SunTiger, Inc. v. Scientific Research Funding Group*,
   189 F.3d 1327 (Fed. Cir. 1999) ........................................................ 47

*Switzerland Cheese Ass'n v. E. Home's Market, Inc.*,
   385 U.S. 23 (1966) ........................................................................... 33

*United States v. Belculfine*,
   527 F.2d 941 (1st Cir. 1975) ........................................................... 55

*Weed v. Soc. Sec. Admin.*,
   571 F.3d 1359 (Fed. Cir. 2009) ........................................................ 27

## *Statutes*

28 U.S.C. §1292 ........................................................................ 35, 36

28 U.S.C. §1295(a)(1) .................................................................. 1, 27

## *Rules*

Fed. R. Civ. P. 41(b) ................................................................... 1, 28

Fed. R. Civ. P. 53(a)(1)(B) ........................................................... 4, 13

Fed. R. Civ. P. 56(c) ......................................................................... 45

*Other Authorities*

8A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE
  §4427 (2d ed. 2002) ....................................................................... 37

9 WIGMORE, EVIDENCE §2588 (J. Chadbourn rev. 1981) ................. 48

Oral Argument at 19:23-38, *Nissim Corp. v. ClearPlay, Inc.*,
  No 2012-1188 (Fed. Cir. Dec. 11, 2012),
  *available at* http:www.cafc.uscourts.gov/oral-argument-
  recordings/2012-1188/all ............................................................ 54

## STATEMENT OF RELATED CASES

Nissim filed two previous appeals in this action: *Nissim Corp. v. ClearPlay, Inc.*, No. 2009-1327, 374 F.App'x 987 (Fed. Cir. 2010) ("*Nissim I*"), and *Nissim Corp. v. ClearPlay, Inc.*, No. 2012-1188, 499 F.App'x 23 (Fed. Cir. 2012) ("*Nissim II*"). The Court also denied Nissim's petition for mandamus, which raised some of the same issues presented in this appeal. *See In re Nissim Corp.*, No. 973, 428 F.App'x 981 (Fed. Cir. 2011).

ClearPlay disagrees with Nissim's statement that the present appeal may affect *Nissim Corp. v. ClearPlay, Inc.*, No. 9:08-cv-80535-PCH (S.D. Fla. May 20, 2008), as the parties' settlement agreement governs the contract-enforcement issues in this appeal, and those contract-enforcement issues have no bearing on the claims at issue in Nissim's pending infringement case. Equally important, because the district court withdrew its jurisdiction without entering a final judgment on the merits in this case, the district court's interlocutory orders have no res judicata effect on any collateral litigation.

## JURISDICTIONAL STATEMENT

Nissim seeks the Court's review of two interlocutory district court orders and asserts 28 U.S.C. §1295(a)(1) as the basis for the Court's jurisdiction. Yet §1295(a)(1) applies only to appeals from a final decision of the district court. Under the "final-judgment rule" an appeal may be taken only after a decision by the district court that ends the litigation *on the merits* and leaves nothing for the court to do but execute the judgment. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1354 (Fed. Cir. 2011). Here, the district court withdrew its discretionary jurisdiction to enforce the parties' settlement and license agreement (the "Agreement") without entering a final decision on the case's merits. A dismissal for lack of subject-matter jurisdiction is not an adjudication of the merits. *See* FED. R. CIV. P. 41(b). Nissim has not appealed the lower court's decision to withdraw jurisdiction and has not asserted any exception to the final-judgment rule. Accordingly, the Court lacks subject-matter jurisdiction to decide this appeal.

1

## INTRODUCTION

Although the district court originally exercised its discretion to enforce the parties' license agreement, the district court later stated that Nissim had misled it into believing that Nissim's "motion to enforce" was not governed by the simple, efficient alternative dispute-resolution procedures contained in the agreement. The district court reached its conclusion after considering the court-appointed Special Master's factual review of ClearPlay's movie-editing decisions and after receiving guidance from this Court's *Nissim I* decision. Accordingly, the district court referred the entire dispute for resolution pursuant to the ADR procedures and expressly withdrew its discretionary jurisdiction to enforce the license agreement and hear the movie-editing disputes at issue.

The district court's decision to withdraw its jurisdiction to enforce the parties' license agreement is dispositive of this appeal. The district court's withdrawal of jurisdiction is not a final, appealable decision on the merits of the case. It simply leaves the parties to resolve their editing disputes through their agreed-upon ADR procedures. Nissim has not appealed the district court's withdrawal of discretionary

jurisdiction, nor has Nissim asserted any exception to the final-judgment rule.

Here, Nissim appeals the denial of two interlocutory motions that the district court denied based on unresolved factual questions. Recognizing its "Motion for Summary Determination" raises numerous factual issues, Nissim does not even ask the Court to render the relief it previously asked the district court to provide, *i.e.*, a summary determination that ClearPlay's filters do not comply with the license agreement. Instead, Nissim asks the Court to make a legal pronouncement about ClearPlay's duties under the license agreement—exactly the kind of piecemeal relief that the final-judgment rule is intended to prevent. Next, Nissim asks the Court to reverse the district court's denial of Nissim's "Motion for Relief on Remand." By this second request, Nissim hopes the Court will take it upon itself to analyze the factual and procedural record and to decide that ClearPlay's decision to withdraw eight of its filters from the litigation is a judicial admission that none of its filters complies with the parties' license agreement. The Court lacks jurisdiction to make such fact-dependent determinations, but even if it had jurisdiction, the facts do not support Nissim's

argument. Nissim's appeal of both interlocutory orders should be denied.

## STATEMENT OF THE CASE

In 2004, Nissim filed a patent-infringement suit against ClearPlay. JA000067. The parties settled the case and signed a license agreement ("Agreement"), and the district court *sua sponte* retained jurisdiction to enforce the Agreement. JA000391. Nissim subsequently alleged that ClearPlay breached the Agreement, contending that ClearPlay's movie-specific editing decisions for "filtering" DVD's failed to substantially comply with certain contractual specifications for editing "objectionable content" (profanity, nudity, violence, etc.) from movies. Although ClearPlay invoked the dispute-resolution procedures for editing disputes set out in §4.6 of the Agreement, Nissim asked the district court to issue an injunction requiring ClearPlay to re-code all of its approximately 2000 filters. JA000396-417.

The district court originally referred a "sample set" of sixteen specific DVD filters to a Special Master for factual recommendations pursuant to Rule 53(a)(1)(B). JA003567-77. After conducting several days of hearings, the Special Master determined ClearPlay was in

4

substantial compliance. The district court affirmed this recommendation and also ordered that all additional editing disputes other than those already submitted to the Special Master be adjudicated under the parties' ADR procedure in §4.6 of their Agreement. JA006307-11.

Nissim appealed to this Court, which partially reversed, holding that the district court's interpretation of "artistic judgment" in §1.4 of the Agreement was too broad. In *Nissim I,* the Court nevertheless held that the factfinder may determine on a "case-by-case" basis to what extent ClearPlay can apply §1.4's "artistic-judgment" clause and still comply with the Agreement's "substantial-compliance" requirement. The Court refused on jurisdictional grounds to entertain Nissim's challenge to the district court's ruling that all further editing disputes would be decided under §4.6.

On remand, Nissim immediately filed a "Motion for Summary Determination," arguing that the district court should simply declare as a matter of law that all of ClearPlay's filters are non-compliant and then order ClearPlay to "use" the objectionable-content specifications. JA00006691-721. The district court denied this motion as being

inconsistent with the Court's *Nissim I* opinion, instead holding that its original order referring factual findings to the Special Master was still in effect. JA000001-04.

Nissim filed a petition for writ of mandamus with this Court, challenging the district court's "reappointment" of the Special Master. The Court rejected the petition, agreeing that the district court's appointment was still in effect and that the Special Master's "services still appear necessary."

The parties agreed that they would re-submit eight of the original 16 filters to the Special Master for case-by-case factual findings. Both parties stated on the record that these eight "Phase I" filters no longer constituted a "representative sample set"; the district court entered an order based on the parties' agreement. JA007482-87. Then, without yielding its position that the Phase I filters fully complied with the contractual specifications for movie editing and in response to Nissim's demand that the court impose prohibitively expensive procedural requirements, ClearPlay offered to remove these eight filters from its service or modify them to Nissim's satisfaction. JA007511-12. Based on its decision to voluntarily withdraw the eight Phase I filters, ClearPlay

moved to dismiss the suit as moot. The district court granted ClearPlay's motion, reiterating that it had withdrawn its discretionary exercise of jurisdiction to hear any additional movie-editing disputes. JA007775.

Nissim appealed from that dismissal, and this Court agreed in *Nissim II* that the district court had failed to clearly articulate its intent to withdraw its jurisdiction over the 2000 filters at issue. The Court held the case was not moot and thus the Court did not have jurisdiction to review the lower court's interlocutory decision to deny Nissim's motion for summary determination or to make any additional holdings.

After this second remand, Nissim renounced its earlier, on-the-record position that the eight Phase I filters no longer constituted a representative sample set. Instead, Nissim reversed course and claimed that the eight Phase I filters were a "representative sample" after all and that ClearPlay's voluntary withdrawal of those eight filters (which both sides previously agreed was not a representative sample) should be deemed an admission that the remaining 1992 filters do not comply with the Agreement's objectionable-content specifications. JA007819-31. The district court denied Nissim's interlocutory motion and definitively

withdrew its discretionary jurisdiction to enforce all aspects of the parties' Agreement. JA000006-07. Nissim did not appeal the district court's withdrawal of jurisdiction or the district court's conclusion that the parties go to ADR—as both sides had consented under the Agreement—to resolve all of their disputes about editing.

## STATEMENT OF FACTS

### A. ClearPlay's Rise, Nissim's Infringement Suit, and the Parties' Settlement

ClearPlay was founded by two brothers, Appellees Matthew Jarman and Lee Jarman, who wanted to create tools for families desiring a home movie viewing experience free from violence, nudity and profanity. In 1998, Matthew Jarman invented concepts that form the basis for ClearPlay's film-editing technology. JA007974. ClearPlay created and began to sell software, DVD players and editing filters incorporating this technology, allowing consumers to filter out content from movies they find objectionable while maintaining the movies' presentation quality. JA007973. ClearPlay obtained numerous patents for its novel content-editing technology and negotiated distribution contracts with major national retailers, including Wal-Mart, Target and

Best Buy, which recognized ClearPlay's products' significant market potential. JA007973-75; JA007985; JA007995. ClearPlay also engaged in sustained negotiations with Samsung to expand the distribution of ClearPlay's products worldwide. JA008001. ClearPlay was on the verge of becoming a major player in providing advanced parental control technology to families, posing a special threat to competitors in the area of content editing.

Nissim Corp. viewed ClearPlay as a threat. While Nissim is a patent-holding company that has never produced a single product, it held five patents pertaining to the production and presentation of what it calls "variable-content" video. Seeing ClearPlay's rise, Nissim sued ClearPlay for patent infringement in 2004. JA000067-183.[1] ClearPlay vigorously contested the suit for over a year. It insisted that its patented products did not infringe Nissim's patents. ClearPlay was confident it would win; Nissim was concerned about that possibility, too. Thus, on the literal eve of trial (November 23, 2005), Nissim approached ClearPlay with a settlement proposal. ClearPlay accepted the deal so that it could go on with business. The parties executed the

---

[1] Nissim alleged infringement of five patents, which have all expired except for one patent that will expire on December 31, 2013.

Settlement and License Agreement (the "Agreement"), which licensed Nissim's patents to ClearPlay in exchange for royalties. JA000418-514.

Despite this settlement, Nissim never intended to stop fighting ClearPlay. Nissim's CEO Max Abecassis explained his plan to his business associate Dr. Robert Adams: "I will never stop till they are shut down and out of business . . . . I would rather die than let the SOB at ClearPlay use my patents legally." JA008018. Dr. Adams stated that even after Nissim entered into the Agreement with ClearPlay, "Mr. Abecassis told me the goal was still to put ClearPlay out of business." *Id*. ClearPlay was unaware of Nissim's plan, so it paid royalties and worked hard to comply with Nissim's movie-editing "specifications" and its other duties under the Agreement.

## B. ClearPlay's Attempts to Comply with Nissim's Editing "Specifications"

In §1.4 of the Agreement ClearPlay agreed to make its editing decisions, compiled on a movie-by-movie basis in what ClearPlay calls content "filters"—Nissim calls them "maps"—that are in "substantial compliance" with Nissim's specifications (the "Specifications").

JA00419.[2] The Specifications are an 80-page set of non-patented guidelines and examples about how to classify particular categories of objectionable content and explicitness. JA000434-514.[3] Given the highly subjective nature of the Specifications (which no other manufacturer with product on the market has ever attempted to implement), the parties agreed to a quick and efficient ADR process to govern the disputes that would surely arise about how to apply the Specifications. The parties agreed to submit such editing disputes to a "Special Master" to "determine if ClearPlay was compliant" with the Specifications. JA000423 at § 4.6. Further, "[a]ll disputes will be determined through a no more than one-page written submission by each party and the submission of the ClearPlay CustomPlay OC Map and Specifications." *Id.*

---

[2] The purchasers of ClearPlay-enabled DVD players can download the filters for each movie from the Internet; this software enables the purchaser to then customize the movie by selecting the category of objectionable-content and the level of explicitness that the purchaser wishes to edit out of that particular movie.

[3] For example, the Specifications call for filters for "amorous" feelings to be coded for implied, explicit, or graphic "Mushiness," defined as "excessively sentimental content relating to a romantic relationship between two Sentient Beings." JA000469.

ClearPlay went to great effort to code its filters to comply with the Specifications. ClearPlay spent almost 4000 man-hours and over $100,000 coding its editing filters and developing new software to meet the requirements of the Specifications. JA000695-98.

## C. Nissim's Threats to ClearPlay's Business Partners, ClearPlay's Attempt to Resolve Compliance Disputes through ADR, and Nissim's Success in Maintaining the Case in Federal Court

In 2007, just as ClearPlay began selling its products through its national retail partners, Nissim began complaining that ClearPlay's filters did not comply with the Specifications. Nissim also wrote letters to ClearPlay's retailers, telling them that ClearPlay did not follow the Specifications and that its products were therefore "unlicensed." *See, e.g.*, JA008048-52; JA008119-48; JA008168-84. Despite the license Agreement, Nissim warned retailers that they would be liable for patent infringement if they continued to do business with ClearPlay. *Id.* These letters destroyed ClearPlay's business, as Samsung and national big-box retailers pulled back from dealing with ClearPlay, concerned about Nissim's threats to sue.[4]

---

[4] Nissim's damaging letters prompted ClearPlay's suit against Nissim for tortious interference, which was dismissed on the basis of federal preemption. *See* JA007970-8223; *ClearPlay, Inc. v. Nissim Corp.*, No. 07-81170-CIV, 2011 U.S. Dist. Lexis 99154 (S.D. Fla. Sept. 2, 2011).

ClearPlay tried to save itself by invoking the Agreement's quick and cost-effective ADR procedure to resolve Nissim's claims—but that effort was thwarted. JA008027-31 (ClearPlay's May 2007 demand for ADR of Nissim's claims before a Special Master pursuant to §4.6 of the Agreement). Nissim sidestepped ADR by filing a motion to enforce the Agreement with the district court in June 2007. JA000395-585.[5] ClearPlay insisted that a Special Master should resolve Nissim's complaints pursuant to §4.6, but Nissim argued that its claims were somehow broader than a mere editing dispute. JA000610-34; JA006372-75. The district court bought Nissim's argument and, more than a year after the dispute arose, appointed Special Master Friedland to make factual recommendations pursuant to federal rule 53(a)(1)(B) rather than simply decide the dispute under §4.6 of the parties' Agreement. JA003567-77.

The district court's order appointing Friedland provided for a "representative sample set" procedure, divided into eight "Phase I" filters and eight "Phase II" filters. JA003568. The district court ordered

---

[5] In dismissing the original patent infringement case, the district court retained jurisdiction to enforce the Agreement; this was the district court's sole basis for asserting subject-matter jurisdiction over this dispute. JA000391.

Friedland to conduct factual hearings on those 16 filters and then to make factual recommendations to the court, with such recommendations presumptively applying to the remainder of ClearPlay's filters. JA003572-73; JA003576.

The parties engaged in six days of hearings before Special Master Friedland. Some of ClearPlay's testimony during these hearings centered on the "artistic judgment" clause in §1.4(iii) of the Agreement, which provides that it is "recognized by the parties that application of the CustomPlay OC Specifications requires flexibility of artistic judgment within the overall goal of maintaining consistency." JA000419. Contrary to Nissim's selective quotations of this testimony in its opening brief, ClearPlay did not represent that it relies on the artistic-judgment clause to the exclusion of the Specifications. ClearPlay demonstrated at length that it went to great pains to code its filters according to the Specifications. JA000686; JA004964; JA005290-91; JA005351-402; *see also* Section II.B. *infra*.

Generally, ClearPlay's testimony established that ClearPlay attempted to implement the Specifications on its existing movies through three basic means. First, ClearPlay hired individual "movie

14

watchers" to re-watch the over 2,000 movies in ClearPlay's catalog and identify any additional video segments for categories of content in the Specifications that ClearPlay had not previously coded. JA000695-98; JA005272-74. Second, ClearPlay "re-classified" much of its previously identified objectionable content to reflect added detail required by the Specifications. To do this, ClearPlay employees called "filter developers" re-reviewed the objectionable material ClearPlay had previously coded and then re-coded additional detail using Tweaker2 and Skynet software. JA000695-98; JA005270-71; *see also* Section II.B. *infra* for additional explanation of Tweaker2 and Skynet. Third, ClearPlay engaged in "direct mapping," identify coding rules in the Specifications that were identical in substance to rules that ClearPlay already used. For instance, using Tweaker2 and Skynet, ClearPlay directly mapped all previously identified instances of generally recognized foul words. JA000695-98; JA005247-50; JA005255.

After the hearings, Special Master Friedland determined that ClearPlay's filters were in substantial compliance with the Specifications, reaching this conclusion based to some extent on §1.4's "artistic-judgment" clause. The district court ratified and affirmed

Special Master Friedland's conclusion that ClearPlay's filters were in substantial compliance with the Specifications. JA006307-11.

Additionally, after reviewing the evidence and testimony from the hearings, the district court came to the conclusion that it had erred by earlier referring factual matters to Mr. Friedland under Rule 53 rather than simply requiring the parties to use §4.6's ADR procedures. JA006311. The district court explained that Nissim had misled the court into believing that the dispute was somehow broader than a simple filtering dispute, ruling that all further disputes concerning ClearPlay's implementation of the Specifications beyond those already submitted to Special Master Friedland would be governed by §4.6. JA007903-11; JA007775; JA007843-44. In fact, the court withdrew its jurisdiction to adjudicate further filtering disputes. JA007775.[6] Nissim appealed the district court's dismissal.

---

[6] The district court also rejected Nissim's contentions that (1) ClearPlay's filters failed to contain "Modified ClearPlay Software" as required in §1.13 of the Agreement; and (2) that ClearPlay's software failed to "implement" the Specifications' "content categories and levels of explicitness." JA006288-89.

16

**D.    The Federal Circuit's *Nissim I* Opinion and the District Court's Denial of "Summary Determination"**

This Court partially reversed the district court's decision, holding that the lower court's reading of §1.4's artistic-judgment clause was too broad and "would swallow the substantial compliance rule." *Nissim Corp. v. ClearPlay, Inc.*, No. 2009-1327, 374 F.App'x 987, 992 (Fed. Cir. May 10, 2010). Nevertheless, the Court recognized that §1.4 did provide ClearPlay some level of discretion in applying the Specifications. *Id.* at 991-93. The Court held that although the artistic-judgment clause would not permit ClearPlay to "deviate from compliance" with the Specifications, the fact-finder would be permitted to conclude that ClearPlay was justified in using "some flexibility of artistic judgment" in applying the Specifications "within the overall goal of maintaining consistency." *Id.* at 992-93. The Court ultimately concluded that

"[w]hether there is substantial compliance is for the fact finder to determine on a *case-by-case basis*." *Id.* (emphasis added).[7]

On remand to the district court, Nissim filed a "Motion for Summary Determination." JA00006691-721. Ignoring this Court's direction that compliance with the Specifications must be determined by a factfinder on a case-by-case basis, Nissim argued on the exact same factual record that the district court should summarily rule that *all* of ClearPlay's filters failed to comply with the Specifications without so much as a single evidentiary hearing. *Id.* Nissim also requested an injunction or court order requiring ClearPlay to "use" the Specifications, without any explanation or further direction regarding what would constitute such "use." *Id.*

On September 7, 2010, the district court denied Nissim's motion, holding that Nissim's requests were inconsistent with *Nissim I*'s call for a case-by-case factual inquiry. JA000001-04. Contrary to Nissim's

---

[7] The Court also dismissed out of hand Nissim's arguments that the district court erred in denying Nissim's claims that (1) ClearPlay's filters failed to contain "Modified ClearPlay Software" as required in §1.13 of the Agreement; and (2) that ClearPlay's software failed to "implement" the Specifications' "content categories and levels of explicitness." *Id.* at 993. The Court stated that these arguments were "without merit." *Id.*

argument here, the district court never made any holding that ClearPlay had no duty to "use" the Specifications in deciding what to code as objectionable. Rather, the district court determined that ClearPlay must substantially comply with the Specifications and that the issue of substantial compliance should be referred to Special Master Friedland for factual recommendations in light of *Nissim I*. JA000003-04.

Nissim filed a petition for writ of mandamus with the Federal Circuit, claiming that the district court's "reappointment" of Special Master Friedland was "without authority" and a "clear abuse of discretion." The Court rejected the petition. *In re Nissim Corp.*, No. 973, 428 F.App'x 981 (Fed. Cir. June 22, 2011). The Court noted that the district court did not "reappoint" Mr. Friedland, that the district court's original 2008 order appointing Mr. Friedland as Special Master "recites no time limit, and that a remand by this court does not appear to change this." *Id.* at 983. The Court further noted the proper purpose behind the district court's actions: "Mr. Friedland was appointed to determine factual issues arising out of that motion [to enforce]. From all

accounts, the parties are still going forward on Nissim's motion to enforce. Therefore, Mr. Friedland's services still appear necessary." *Id.*

## E.   Consensus That the Eight Phase I Filters Did Not Constitute a Representative Sample Set

ClearPlay moved to proceed with the compliance hearings before Special Master Friedland. JA007334-48. The parties agreed that Mr. Friedland would review only the eight Phase I filters rather than all 16 Phase I and Phase II filters. JA007359-65. The parties also stipulated that this would be a "case-by-case" review, as they understood *Nissim I* to require, and that those eight movies no longer constituted a "representative sample" as previously characterized in the original 2008 order appointing Special Master Friedland. JA007349-65. Nissim made its position clear that in light of *Nissim I* "there is no such thing as a compliant or non-compliant sample set; there are only compliant or noncompliant individual filters." JA007355. Nissim's briefing argued that "The Sample Set Is No Longer Valid and No Presumptions Regarding Other Filters Can Arise From Findings On the Sample Filters." JA007352; *see also* JA007055-56 (same). The parties agreed that Mr. Friedland would review only the eight Phase I filters and that

this review would have no impact on whether ClearPlay's other filters were considered compliant or noncompliant.

The only procedures on which the parties could not agree were the details of the proceedings themselves. ClearPlay argued for simple, cost-efficient procedures similar to those detailed in §4.6 of the Agreement. JA007502; JA007902-69. Nissim, however, insisted on a two-month discovery period, no cap on the number of depositions, the exchange of extensive "allegations" charts, two sets of briefing, and no restriction on hearing length. JA007499-500.

On September 27, 2011, the district court issued its order setting out the schedule and procedure for the Special Master proceeding. JA007482-87. Significantly, unlike the original order appointing the Special Master, which is replete with references to a "representative sample" (*compare* JA003568-77), the district court' post-*Nissim I* procedural order omitted the concept of using the eight Phase I filters as a "representative sample set" for the remaining 1992 filters. JA007486. Instead, the district court directed the Special Master to render a written report as to "whether each of the Filters, *separately and individually*, substantially complies with the CustomPlay

Objectionable Content Specifications." *Id.* (emphasis added). The district court also adopted many of Nissim's proposed procedural demands. JA007483-86.

After Nissim delivered its extremely extensive allegation chart describing hundreds of purported instances of non-compliance and noticed 12 depositions, ClearPlay estimated that the procedures for only eight filters would cost between $350,000 and $500,000.[8] JA007499-500; JA007511-12. ClearPlay decided that it could not reasonably justify this enormous cost to adjudicate the compliance of filters for only eight movies. Thus, without admitting non-compliance, ClearPlay offered to remove these eight filters from its online catalog or modify them to meet Nissim's demands, giving Nissim the entirety of the prospective relief requested with respect to these eight filters. JA007511-12. On this basis, ClearPlay moved to dismiss the case as moot, arguing that no filtering issues remained to be decided in light of the district court's stated intent to withdraw jurisdiction over all future filtering disputes. JA007497-25; JA007907; JA007933. At the hearing on the motion to

---

[8] Mr. Friedland received a rate of $550 per hour. JA007486.

dismiss, ClearPlay orally confirmed that it had removed the eight filters from its catalog. JA007774.

In an order dated December 21, 2011, the district court granted ClearPlay's motion and dismissed the case as moot. JA007775. The court also expressly reiterated that it had withdrawn its jurisdiction to hear any additional filtering disputes and ordered that further such disputes would be governed by §4.6. *Id.* Nissim appealed the district court's December 21, 2011 judgment. JA007777-78.

## F.   The Federal Circuit's *Nissim II* Opinion and the District Court's Denial of Relief on Remand

The Court reversed the district court's judgment, holding that the case was not moot because Nissim's original motion to enforce sought to enjoin ClearPlay from selling or distributing its filters and because "there was no adequate basis to conclude that the district court had withdrawn jurisdiction over the remaining 1992 filters." *Nissim Corp.*, 499 F.App'x at 27-28. The Court then decided it lacked jurisdiction to decide any other issues. *Id.* at 29-30. While the Court clarified certain aspects of its *Nissim I* opinion and suggested possible means for the district court to use a representative sample to make future

determinations, the Court did not make any determination as to what the district court "could hold on remand." *Id.* at 30.

On remand, Nissim filed its motion asking the district court to determine that ClearPlay's voluntary withdrawal of the eight Phase I filters constitutes a judicial admission that all of ClearPlay's 2000 filters do not comply with the Specifications. JA007819-31. The district court, in detailed oral statements and a written order, definitively relinquished its discretionary jurisdiction to enforce the Agreement as to all the filters in question and dismissed Nissim's motion for relief on remand. JA000006-07. All parties agreed on the record that the court's intention to withdraw jurisdiction was clear this time. JA007841-45. Unless reversed by this Court, the district court's withdrawal of jurisdiction will leave the parties to resolve all future editing disputes through the agreed-upon ADR procedures until the agreement expires on December 31, 2013.[9]

---

[9] The district court emphasized that all future editing disputes must be resolved by ADR: "[I]f a new action is filed in the Southern District of Florida . . . it would be my view that the settlement agreement provides the only recourse for resolving those disputes, and any breach of the settlement agreement would be a failure to follow the [ADR] procedures outlined in [§]4.6." JA007845.

## SUMMARY OF THE ARGUMENT

The Court lacks subject-matter jurisdiction to hear Nissim's appeal. Nissim's issues arise from interlocutory orders, and the district court withdrew its discretionary jurisdiction without entering a final judgment on the merits. Nissim states that it does not appeal the district court's decision to withdraw its discretionary jurisdiction to enforce the parties' Agreement, and Nissim fails to raise any exception to the final-judgment rule. The district court denied Nissim's two motions for summary judgment based on numerous unresolved fact questions. The interlocutory orders denying those motions are not final, appealable judgments and have no preclusive effect on any collateral litigation.

Even if the Court had jurisdiction to address those interlocutory orders, Nissim's appeal would still fail on the merits. It is not the province of an appellate court to resolve the kind of factual questions raised in Nissim's interlocutory motions, nor should the Court accept Nissim's invitation to issue an advisory opinion on certain "legal issues" for the benefit of other pending litigation. In any event, Nissim's legal arguments are off base.

First, the district court never held that ClearPlay had no duty to use the Specifications. Instead, the district court explained that ClearPlay must use the Specifications but that determining ClearPlay's compliance for any particular filter required a filter-by-filter factual review, consistent with *Nissim I*.

Second, ClearPlay's offer to remove or modify eight Phase I filters was not a judicial admission that its remaining 1992 filters failed to comply with the Specifications—and the district court did not err in rejecting Nissim's motion on the issue. Whether ClearPlay intended to make a judicial admission of noncompliance on all of its filters is a fact-specific inquiry. And, here, several facts prevented the district court from granting Nissim's motion. For example, (1) both sides stipulated that the eight Phase I filters did *not* constitute a representative sample set; (2) after *Nissim I*, the district court required the Special Master to decide ClearPlay's compliance with the Specifications "separately and individually," on a filter-by-filter basis rather than through sample sets; and (3) ClearPlay had no reason to spend large sums of money defending compliance with those eight filters once the parties and the district court decided not to use representative sample sets to determine

ClearPlay's global compliance with the Specifications. Those were the real reasons ClearPlay withdrew the eight Phase I filters. There was not a judicial admission of noncompliance binding upon those filters or any others.

The district court was right to deny Nissim's motions. But, whether the district court was right or wrong, its orders denying Nissim's motions are not appealable.

ARGUMENT

## I.   The Court Lacks Jurisdiction to Address the Two Interlocutory Orders Complained of by Nissim.

### A.   The District Court's Withdrawal of Jurisdiction in Favor of ADR Is Not Appealable.

The Court lacks subject-matter jurisdiction to hear this appeal because the district court withdrew its discretionary jurisdiction to enforce the parties' Agreement without entering a final judgment on the merits. The statutory "final-judgment rule" generally restricts appellate jurisdiction to reviewing only "final decision[s] of a district court." 28 U.S.C. §1295(a)(1); *Spread Spectrum Screening LLC*, 657 F.3d at 1354; *Weed v. Soc. Sec. Admin.*, 571 F.3d 1359, 1361-62 (Fed. Cir. 2009). A "final decision" is "one which ends the litigation on the merits and

27

leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). The underlying policy justification for the rule is to prevent "piecemeal litigation." *Id.*

A district court's order dismissing a case for lack of jurisdiction is not a final judgment on the merits of the case. *See* Fed. R. Civ. P. 41(b) ("[A] dismissal under this subdivision [] and any dismissal not under this rule—except one for lack of jurisdiction . . . operates as an adjudication on the merits."); *Killeen v. Office of Pers. Mgmt.*, 558 F.3d 1318, 1323 (Fed. Cir. 2009). A dismissal for lack of jurisdiction means that the subject matter of the dispute is one that the court is not empowered to hear and decide. *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed. Cir. 1995). Accordingly, the district court's order dismissing the case for lack of jurisdiction has no res judicata effect, and the parties are free to pursue whatever remedies they are entitled to under their contractual ADR procedures. *See Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369-70 (Fed. Cir. 2003); *Schafer v. Dep't of Interior*, 88 F.3d 981, 990 (Fed Cir. 1996) ("This is a decision on the merits which, unlike dismissal for want of jurisdiction, has a res judicata effect.").

Here, the district court determined that the ADR procedures set out in §4.6 of the Agreement were the proper way for the parties to resolve their disputes about whether ClearPlay's editing decisions substantially complied with the Specifications. That is why the district court unequivocally withdrew its discretionary jurisdiction to enforce the Agreement. The district court explained the basis for its withdrawal of jurisdiction as follows:

> I think I obviously made an error in taking jurisdiction over the filters in the first instance.
>
> I recall, when this matter was first brought up some years ago, that Clearplay's Lawyer . . . tried to convince the Court that the parties themselves had decided the best, most efficient way to resolve the filter disputes, and that was resolved by resorting to the provisions provided in Section 4.6.
>
> Nissim at that time, objected to that, arguing that we didn't have to do this on a filter by filter basis. . . . I was convinced, based on that argument, that it could be done by review of the sampling of each filter, but rather the basic methodology itself was so flawed.
>
> I am now of the view that that's not the case. I should not have sent this case to the Special Master, and certainly not a Special Master who has an expertise in patent law technology because the determination of whether these filters comply with the objective content requirements is less than an issue of technology or specialized education that a patent lawyer would have.

> So I'm sorry we went down that road. I know it's been a long and expensive road, but I think it was the wrong road to have traveled. [H]aving seen the light[,] I think relinquishing jurisdiction over the remaining disputes is appropriate, and that's why I'm doing it.

JA007843-44.

Section 4.6 sets out a very simple ADR procedure that could have spared the courts and the parties from years of litigation. "All disputes will be determined through a no more than one-page written submission by each party and the submission of the ClearPlay CustomPlay OC Map and Specifications." JA000419. The arbitrator then compares ClearPlay's editing map with the Specifications and makes a binding decision about ClearPlay's compliance for each map. Using this procedure, the parties can resolve their dispute inexpensively on a movie-by-movie basis and without the need for extended, fact-intensive involvement from the federal courts. That efficiency was the reason the parties included §4.6 in their Agreement, and it is why ClearPlay has repeatedly invoked the provision throughout this litigation. *See, e.g.*, JA007970 at Ex. 8; JA000610-634. As the district court has now agreed, the case never belonged in court. Sadly, the courts' failure to honor the parties' ADR procedure cost

ClearPlay years of litigation—and left ClearPlay defenseless to protect itself from Nissim's threats to sue ClearPlay's once-promising business partners. Those partners and those opportunities are long gone.

Yet, because the district court's withdrawal of jurisdiction is not a final judgment with res judicata effect, Nissim still remains free to pursue its enforcement claims through §4.6's simple ADR procedure. Nissim thus has no ground to assert that the district court's interlocutory orders will cause irreparable harm to its claims in this or any other litigation.

Nissim unequivocally acknowledges that it is not appealing the district court's discretionary decision to withdraw its jurisdiction. *See* Nissim Br. at 6 n.1.[10] That admission disposes of this appeal. While dismissal for lack of subject-matter jurisdiction does not count as adjudication on the merits, it does constitute a binding determination on the jurisdictional question when appeal of that issue is not perfected. *See, e.g.*, *Int'l Air Response v. United States*, 302 F.3d 1363, 1369 (Fed Cir. 2002) ("A party that has had an opportunity to litigate the question

---

[10] A federal district court's voluntary retention of jurisdiction to enforce a settlement agreement after dismissal falls under the doctrine of ancillary jurisdiction, the exercise of which is "in the court's discretion." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381 (1994).

of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment.'" (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 702 n.9 (1982))). In short, the Court lacks subject-matter jurisdiction because the district court never entered a final, appealable judgment on the merits and Nissim failed to appeal the district court's decision withdrawing its discretionary jurisdiction.

### B.   Nissim Cannot Establish—and Does Not Even Argue—Any Exception to the Final-Judgment Rule.

Nissim has not asserted any exception to the final-judgment rule. Nissim seeks appellate review of two interlocutory orders: (1) the district court's 2010 order denying Nissim's "Motion for Summary Determination" and (2) the district court's April 2013 order denying Nissim's "Motion for Relief on Remand," neither of which finally decided the merits of Nissim's contract claims. Both motions were effectively motions for summary judgment because they each asked the district court to summarily decide the ultimate issue in this case—whether ClearPlay's 2000 filters (editing maps) substantially complied with the Agreement.

Yet denials of a motion for summary judgment are still subject to the final-judgment rule. *See, e.g.*, *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011); *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1344 (Fed. Cir. 2006). "An order *denying* a motion for partial summary judgment . . . is merely a judge's determination that genuine issues of material fact exist" and is "not a judgment, and does not foreclose trial on the issues on which summary judgment was sought." *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986). Such orders are "interlocutory, non-final, and non-appealable." *Parker Brothers v. Tuxedo Monopoly, Inc.,* 757 F.2d 254, 255 (Fed. Cir. 1985).

The rule still applies even when a summary-judgment motion seeks a permanent injunction when, as here, the district court denies summary judgment based on unresolved factual issues. *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1576 (Fed. Cir. 1996); *Gerber Garment Technology, Inc. v. Lectra Sys., Inc.*, 916 F.2d 683, 686 (Fed. Cir. 1990). Such a denial "does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial." *Switzerland Cheese Ass'n v. E. Home's Market, Inc.*, 385 U.S. 23, 25 (1966). Here, while Nissim sought a permanent injunction, no exception

to the final-judgment rule applies, since the district court denied the injunction based on unresolved factual issues. *See* JA000003-04. Nissim now admits that ClearPlay's compliance with the Specifications is inherently a factual question, but claims that the Court can parse the district court's order into factual issues and legal issues—and then decide only the narrow legal issue of contract interpretation. Nissim Br. 7, 38. There is no precedent for such a fragmented analysis. More important, Nissim's attempted end-run around the final-judgment rule fails because the district court denied Nissim's motion based on disputed factual issues. *Lermer*, 94 F.3d at 1576; *Gerber*, 916 F.2d at 686.[11]

---

[11] Nissim claims that it "does *not* . . . seek a ruling in this appeal on the *factual* question whether ClearPlay indeed failed to use the CustomPlay Specifications in determining what to code as objectionable." Nissim.Br. 7, 38. Nissim argues (incorrectly) that the district court did not reach that factual question. As explained more fully in Section II, *infra*, Nissim is mistaken about the district court's denial. The district court expressly stated that it could not grant summary judgment because, under *Nissim I*, the question of whether Clearplay's filters substantially complied with the contractual specifications "requires a fact-specific inquiry, not a summary determination." JA000003; *see also Nissim Corp.*, 374 F.App'x at 991 ("The Specifications are the standard against which the substantial compliance of ClearPlay's OC maps must be measured according to the plain language of the Agreement. It is up to the finder of fact to determine if ClearPlay meets that standard.").

The denial of Nissim's subsequent motion—which asked the Court to deem that ClearPlay had judicially admitted noncompliance with the Specifications—fails to overcome the final-judgment rule for essentially the same reason. As discussed in Section III below, factual issues precluded any holding that ClearPlay's withdrawal of its first eight filters was a deliberate and informed admission of noncompliance as to its 1992 remaining editing maps. In light of the evidence in the record calling into question Nissim's assertion that the parties agreed that the eight Phase I filters constituted a representative sample (*see, e.g.*, JA007349-58; JA007359-65; JA007482-87; JA007506-07), it was reasonable for the district court to deny Nissim's motion. Even so, the district court's denial did not finally determine one way or another whether the 1992 filters actually complied with the Specifications—a fact issue that is yet to be determined.

Nor does 28 U.S.C. §1292 provide an exception to the final-judgment rule here. In limited circumstances, the Court may review the denial of an interlocutory order if the denial "might have 'serious, perhaps irreparable, consequence,'" *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981); *see also* 28 U.S.C. §1292. Otherwise, "the general

congressional policy against piecemeal review will preclude interlocutory appeal." *Carson*, 450 U.S. at 84. Again, Nissim does not invoke §1292, nor does it show that the interlocutory orders would irreparably harm its enforcement claims. It simply cannot make such a showing, since the Agreement's straightforward ADR procedures afford Nissim a full opportunity to determine whether each of ClearPlay's 2000 filters substantially complies with the Specifications.

Equally important, Nissim does not appeal the lower court's denial of injunctive relief. Although Nissim's motion for summary determination originally sought an injunction forcing ClearPlay to "use" the Specifications, Nissim's current appeal seeks only a judicial pronouncement concerning ClearPlay's duty to use the Specifications when determining what to code as objectionable content. Nissim. Br. at 7. Likewise, Nissim's motion for relief on remand sought a declaration that ClearPlay has waived its defenses (*i.e.* a statement that ClearPlay's withdrawal of the Phase I filters operated as a concession of noncompliance as to the universe of filters ClearPlay created) and never requested injunctive relief. *Id. see also* JA007819-31.

Nissim asserts that "[t]he two interlocutory rulings now on appeal could, if "sufficiently firm," have collateral consequences in the 2008 Infringement Case." Nissim Br. at 53 (internal cite omitted). But Nissim's argument that the interlocutory orders *could* be deemed "final" (or "sufficiently firm") because they *might* have preclusive effect on other pending litigation is circular reasoning and is not supported by any legal authority. To have preclusive effect, a judgment must be a final adjudication of the rights of the parties and must dispose of the litigation on the merits. *See Media Techs. Licensing, LLC*, 334 F.3d at 1369-70 (citing 18A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE §4427, at 4-5 (2d ed. 2002)). Because the district court denied Nissim's two interlocutory motions based on unresolved fact issues, neither order can be deemed final (or even "sufficiently firm"), and therefore neither can have any preclusive effect on collateral litigation.

The district court's denial of the two interlocutory orders Nissim seeks to appeal did not finally decide the merits of any issue in this case and thus cannot be deemed to be final, appealable judgments. The Court lacks subject-matter jurisdiction to hear Nissim's appeal.

## II.    Given the Extensive Unresolved Factual Issues, the District Court Did Not Err in Denying "Summary Determination."

Even if the Court had subject-matter jurisdiction to address the district court's interlocutory orders, Nissim's appeal would still fail on the merits because the district court correctly applied *Nissim I* and because there is substantial evidence showing that ClearPlay used the Specifications to code its filters.

### A.    The District Court Correctly Applied *Nissim I*, Which Requires Fact Determinations on the Issue of Substantial Compliance.

Contrary to Nissim's first argument on appeal, the district court did not err in refusing to grant Nissim's "Motion for Summary Determination," in which Nissim asked the district court to summarily declare that all of ClearPlay's edit maps are substantially noncompliant and to issue an order requiring ClearPlay to "use" the Specifications.

*Nissim I* already interpreted the language of the Agreement and in particular the meaning of the two phrases in §1.4(iii) that are relevant to Nissim's argument: the "substantial compliance" and the "flexibility of artistic judgment" provisions. *See Nissim Corp.*, 374 F.App'x at 990. Interpreting those two provisions, the Court struck a careful balance that would not write either provision out of the

38

Agreement. *Id.* at 990-91. While the Court recognized that the district court's original expansive reading of §1.4's artistic judgment exception "would swallow the substantial compliance rule," the Court also acknowledged that substantial compliance "allows for some flexibility of artistic judgment in applying the specifications." *Id.* at 992; 993.

The Court balanced the Agreement's two goals—allowing "artistic judgment" while still requiring "substantial compliance" with the Specifications—by employing a flexible, subjective standard. Rejecting Nissim's quantitative comparisons of ClearPlay's coding choices, the Court stated, "[t]he agreement uses a subjective standard; it does not define this standard with quantitative precision." *Id.* at 990. Although the Federal Circuit disapproved of an expansive interpretation of §1.4 that might "swallow the rule" of substantial compliance, the Court left ample room for a factfinder to determine on a case-by-case basis that ClearPlay's individual instances of reliance on §1.4 were consistent with the "overall goal of maintaining consistency" with the Specifications, thereby resulting in the substantial compliance of each individual filter. Because the Specifications provide mere guidelines and examples, "[t]his leaves a lot of discretion for the exercise of artistic judgment in

applying these Specifications." *Nissim Corp.*, 374 F.App'x at 993. The Court further explained, "We cannot discern from the Agreement every possible basis upon which ClearPlay is allowed to exercise its artistic judgment and leave individual determinations to the fact finder." *Id.*[12]

The Court held that Nissim's claim that ClearPlay's filters fail to "implement" the Specifications' "content categories" and "levels of explicitness" was "without merit." *Id.* at 993. In so holding, the Court acknowledged that ClearPlay's filters do in fact "use" the Specifications. Ultimately, the Court concluded that the proper methodology for determining substantial compliance was to submit the filters to the fact-finder for individual determination. *Id.* at 992 ("Whether there is substantial compliance is for the fact finder to determine on a case-by-case basis.").

On remand from *Nissim I*, Nissim immediately filed its motion for summary determination," relying on the very same factual record just reviewed by the Federal Circuit. But whereas the Court expressly stated that substantial compliance with the "subjective" Specifications

---

[12] The Court also noted that under §4.8 of the Agreement, ClearPlay is permitted to refrain from coding a particular scene if it is "essential" to the movie, which is also a question of fact. *Id.* at 992.

is a fact question for the factfinder on a "case-by-case" basis, Nissim argued that the district court should simply declare all of ClearPlay's filters to be systemically noncompliant without any evidentiary hearing.

Nissim argues that the Agreement compels ClearPlay to use a specific process or methodology derived from the Specifications to decide what to code as objectionable content. JA006691-93. Nissim then points to selected deposition excerpts to suggest that ClearPlay admitted it failed to use the Specifications in the process of making its coding decisions. JA006694-13.  Although it is not clear exactly how Nissim imagines ClearPlay should have "used" the Specifications to make its coding decisions, Nissim's motion suggests the Specifications create a purely objective standard for measuring ClearPlay's substantial compliance. Thus, Nissim's motion implicitly asked the district court to reject the reasoned balance struck in *Nissim I* and impose an objective standard that would now "swallow" §4.1(iii)'s artistic-judgment provision.[13]

---

[13] Nissim's argument about duty conflicts with *Nissim I*. On page 27 of its brief, Nissim cites testimony about the movie *Ocean's Eleven.* Mr. Jarman's testimony was that, pursuant to the artistic-judgment clause, ClearPlay did not code for "substance-abuse" scenes in which the character Reuben smokes a cigar. Nissim suggests that this fact would

On appeal, Nissim argues that in denying Nissim's summary-determination motion, the district court made a legal holding that ClearPlay has "no duty" to "use" the Specifications. In support of its argument, Nissim quotes a portion of the lower court's decision disputing Nissim's argument that the Agreement specifies a particular coding methodology. Nissim Br. at 32 (quoting JA000003). Nissim contends that this language constitutes a legal judgment that "ClearPlay has no duty do use the CustomPlay Specifications to determine what to code as objectionable." *Id.* at 37.

But Nissim is wrong to assume that the district court failed to consider the factual issues inherent in the substantial-compliance determination or that the district court ruled that ClearPlay had no legal duty to use the Specifications. The district court's order discussed *Nissim I*'s holding that "substantial compliance" with the "subjective" Specifications is a fact-specific, case-by-case inquiry for the factfinder.

---

support a "summary determination" that ClearPlay has violated the Specifications. *Id.* The Court already addressed this precise example in *Nissim I*, explaining that "[i]t is *up to the fact finder to determine* whether the decision to not code Reuben holding a cigar" supports an ultimate determination of whether ClearPlay's *Ocean's Eleven* filter is substantially compliant or not. *Nissim Corp.*, 374 F.App'x at 991 (emphasis added).

JA000003. The district court expressly stated that the reason it was denying Nissim's motion was because "[t]he Federal Circuit indicated that the proper course on remand was to determine compliance on a case-by-case basis for each filter." *Id.*; *see also* JA000004 ("As a result, the Court finds that the proper course is to submit the dispute to the Special Master again."). After the district court denied Nissim's motion, this Court agreed that "Mr. Friedland's services still appear necessary" to resolve factual issues arising out of Nissim's motion to enforce. *In re Nissim Corp.*, 428 F.App'x at 981.

The district court never made a holding that ClearPlay had no duty to use the specifications. Instead, relying on this Court's interpretation of the Agreement in *Nissim I*, the district court ultimately held that ClearPlay does have a duty to comply with the Specifications but that the ultimate decision as whether ClearPlay's filters substantially comply with the Agreement "requires a fact-specific inquiry, not a summary determination." JA000003. Accordingly, the district court reasonably denied Nissim's motion for summary determination and resubmitted the dispute to the Special Master. JA000004.

### B.    ClearPlay Uses the Specifications.

Contrary to Nissim's selective quotations, ClearPlay actually uses the Specifications to code its filters. ClearPlay's Matthew Jarman testified that ClearPlay has spent over 3,800 man-hours and $66,300 in its compliance effort, plus an additional 1,256 hours and $53,937 in developing software to implement the Specifications. JA00698; JA004964; JA005290-91. ClearPlay's compliance manager testified extensively about ClearPlay's Tweaker 2 and Skynet software programs, which ClearPlay specifically designed and developed to apply the Specifications. JA005351-402. As demonstrated extensively to the Special Master, Tweaker2 is the video editing software program that ClearPlay developed subsequent to entering into the Settlement Agreement. ClearPlay's movie editors use Tweaker2 to identify the beginning frame and the ending frame of video segments that contain objectionable content according to the Specifications. Tweaker2 provides the editors with a comprehensive list of objectionable-content descriptors that assist the editor in identifying all types of objectionable content as catalogued in the Specifications.

ClearPlay designed Skynet to assign the video segments identified in Tweaker2 to categories and levels of explicitness, using the categories and levels standardized by the Specifications. Skynet uses the descriptors assigned to each identified video segment in Tweaker2 to map the scene to the proper category and explicitness level according to the guidelines contained in the Specification.

Mr. Kidd explained at length how and to what extent ClearPlay's employees utilized this software to code the filters through the processes of (1) "movie watching," (2) "reclassification," and (3) "direct mapping." *Id.*; *see also* JA000695-98; JA005247-50; JA005255-56; JA005270-74.

This evidence shows that ClearPlay did, in fact, devote substantial time, effort, and resources to coding its filters to comply with the Specifications. Such evidence provides a sound basis on which a fact finder could reasonably determine that ClearPlay properly "uses" the Specifications, particularly since evidence must be viewed in the light most favorable to ClearPlay with all reasonable inferences drawn in ClearPlay's favor. *See* FED. R. CIV. P. 56(c); *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).

Considering this evidence of ClearPlay's compliance efforts, the Court cannot summarily determine that ClearPlay's filters do not substantially comply with the Specifications. Indeed, even Nissim has walked back from the relief it originally requested in its 2010 motion for summary determination. Rather than a seeking a final determination that ClearPlay's filters do not comply with the Specifications, Nissim now seeks a declaration condemning the district court's purported "contract interpretation," and stating that ClearPlay has a legal duty to use a particular, but vaguely-defined "methodology" for implementing the Specifications. Nissim Br. at 48-49. But as the district court correctly held, the Agreement does not give Nissim a right to force ClearPlay to use any particular methodology, but instead gives Nissim a cause of action only in the event that ClearPlay's demonstrated efforts to "use" the Specifications fail to result in "substantial compliance," which is a question for the factfinder.

Nissim is not entitled to an order summarily requiring ClearPlay to "use" the Specifications. ClearPlay already uses the specifications. The only question is whether ClearPlay's use has resulted in substantial compliance, which the Court previously held (and Nissim

now acknowledges) is a question of fact to be decided on a case-by-case basis.

## III.   The District Court Did Not Err in Denying Nissim's Motion for Relief on Remand.

The district court did not err in its decision to deny Nissim's motion for relief on remand because, like Nissim's motion for summary determination, this summary motion depends on the resolution of multiple controverted fact issues. Nissim's motion asked the district court to decide whether ClearPlay's withdrawal of the eight Phase I filters from the Special Master proceeding should be deemed a concession or judicial admission that all of ClearPlay's 2000 remaining filters fail to comply with the Specifications. Because the question of whether ClearPlay made a judicial admission depends on ClearPlay's understanding of its rights and its intent to waive those rights, this is inherently a fact question to be determined by the factfinder.

Here, the district court did not explain the basis for its decision to deny Nissim's "Motion for Relief on Remand." JA000006. Nevertheless, the Court must give considerable deference to the district court's decision denying summary judgment. *See SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir. 1999) ("[W]hen

47

a district court *denies* summary judgment, we review that decision with considerable deference to the court."); *see also MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) (district court's decision as to whether a particular statement constitutes a judicial admission is reviewed for abuse of discretion). Given the significant record evidence contradicting Nissim's argument that ClearPlay made a knowing and informed waiver or concession of its legal rights, the district court's decision to deny relief on remand was eminently reasonable. To the extent that the Court determines it has jurisdiction to hear the appeal, the Court should affirm the district court's decision to deny the requested relief.

### A.    Whether ClearPlay Intended to Make a Judicial Admission or Stipulation is a Question of Fact.

A "judicial admission or stipulation" is an "express waiver made . . . by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact." *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348, (2013) (quoting 9 WIGMORE, EVIDENCE §2588, at 821 (J. Chadbourn rev. 1981)). A waiver is an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). Waiver requires (1) the existence at

the time of the waiver a right, privilege, advantage, or benefit that may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit. *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982). Waiver is usually a question of fact because it depends upon the intent of the parties. *Id.* at 1348; *see also MacDonald*, 110 F.3d at 340 (weighing conflicting statements in an attorney's opening statement and concluding that "such statements are fundamentally at odds with an intent to waive").

Under the Court's deferential standard of review, if there is any record evidence contradicting Nissim's assertion that ClearPlay intended to make an express, deliberate and voluntary waiver, legal concession, or judicial admission, the Court must affirm the district court's decision to deny the "Motion for Relief on Remand."

### B.    ClearPlay Did Not Intend to Waive its Rights.

The evidence refuting Nissim's motion is substantial. In particular, at least three circumstances indicate that after remand from *Nissim I*, the parties and the district court all believed that the Phase I filters no longer constituted a "representative sample set" and that

ClearPlay therefore did not intend that the Withdrawal of the Phase I filters would be binding on all other filters.

First, ClearPlay withdrew the Phase I filters only after the district court issued its September 27, 2011 order setting out the post-*Nissim I* Special Master hearing procedures. That order omitted all references to a "representative sample set." The new order also twice directed the Special Master to determine whether each of the filters "separately and individually" substantially complied with the Specifications. JA007486-87 ClearPlay reasonably believed, based on these changes to the district court's order, that the Phase I filters no longer constituted a representative sample set and that a determination of those filter's substantial compliance would have no bearing on the other filters.

Second, before ClearPlay's decision to withdraw the eight Phase I filters, Nissim itself strenuously argued in briefing to the district court that the eight Phase I filters were not a representative sample and that each filter's compliance must be decided on a case-by-case basis. JA007349-65. Nissim argued that under *Nissim I*, "there is no such thing as a compliant or non-compliant sample set; there are only compliant or noncompliant individual filters." JA007355. Nissim's brief

to the district court stipulated, "The Sample Set Is No Longer Valid and No Presumptions Regarding Other Filters Can Arise From Findings On the Sample Filters." JA007352; *see also* JA007055-56 (same). Based on these arguments, which informed and influenced ClearPlay's decision to withdraw the Phase I filters, Nissim is estopped from asserting that the eight Phase I filters now constitute a representative sample or that ClearPlay's decision to withdraw those filters is a deemed admission of noncompliance as to the remaining filters. *See Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994) ("Estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated").

Third, Nissim cannot point to any express statement by ClearPlay or its counsel that ClearPlay's eight Phase I filters do not comply with the Specifications or that ClearPlay intended the Phase I filters to be a representative sample for all other filters. To the contrary, at the time it withdrew the filters and consistently thereafter, ClearPlay repeatedly denied that the eight filters it withdrew were part of a representative sample set and expressly denied any intent to concede liability as to the

eight Phase I filters, much less the remaining 1992 filters. JA007359-11; JA007511-12.

ClearPlay's October 28, 2011 letter announcing Defendants' intention to withdraw the eight filters stated that the representative sample set procedure no longer applied. The letter notes, "Upon remand [from *Nissim I*], the parties agreed to review only the eight Phase I movies, recognizing that the compliance of such movies cannot reflect on the compliance of other movies not reviewed." JA007511. ClearPlay still denied that its filters violated the Specifications: "Clearplay's coding of the eight movies is substantially compliant under the Agreement." JA007512. After explaining that its decision to pull the eight filters was made "in light of the expensive [discovery and hearing] procedure demanded by Nissim," ClearPlay reiterated that "Clearplay's maps for the eight movies are substantially compliant; Clearplay's decision is not a concession that it is in violation of the agreement." *Id.* ClearPlay's decision to withdraw the filters was simply a business decision based on its belief that the eight Phase I filters did not constitute a sample set and that the $350,000 to 500,000 cost of vetting the eight Phase I filters in the Special Master proceedings would exceed

the economic value of those eight filters. *Id.* This evidence of ClearPlay's stated intent refutes Nissim's argument that ClearPlay's withdrawal of the Phase I filters was an "express waiver made . . . by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact." *See Standard Fire Ins. Co.*, 133 S. Ct. at 1348. At minimum, the conflicting evidence creates a fact question that precludes summary judgment.

The single statement from ClearPlay's counsel that Nissim cites in its brief also fails to satisfy the elements of a judicial admission. The excerpt from the *Nissim II* oral argument, which Nissim quoted on page 50 of its brief, is incomplete and fails to set out the full explanation from ClearPlay's attorney. After acknowledging the Court's apple-barrel hypothetical, Mr. Page distinguished this case with the following explanation:

> MR. PAGE: It would, Your Honor, *if* you were using a sample set procedure. *However, in this case there were significant occurrences that changed the whole set of disputes that were before the district court* at the time that this case was mooted.

Oral Argument at 19:23-38, *Nissim Corp. v. ClearPlay, Inc.*, No 2012-1188 (Fed. Cir. Dec. 11, 2012), *available at*

http:www.cafc.uscourts.gov/oral-argument-recordings/2012-1188/all

(emphasis added). Mr. Page described ClearPlay's contemporaneous belief, based on "critical statements" in the Court's *Nissim I* decision, indicating that a sample set procedure was not valid and thus the Phase I filters no longer constituted a representative sample with binding effect on the remaining 1992 filters. *Nissim II* Oral Argument at 20:15-20:47. Mr. Page went on to explain that the joint order signed by the district court in September 2011, which required the Special Master to determine whether each filter "separately and individually" complies with the Specifications, dramatically changed ClearPlay's understanding of the significance of the Phase I filters and influenced ClearPlay's offer to withdraw those eight filters. *Id.* at 21:00-22:14. Mr. Page's oral argument is not a judicial admission of noncompliance as to the universe of ClearPlay's 2000 filters.

### C. Even if ClearPlay Were Incorrect in Its Legal Theory of the Case, the District Court Did Not Err in Denying Summary Relief.

Due to the serious consequences of judicial admissions, even when the elements of an admission are met, trial courts are afforded broad latitude to negate the binding impact of judicial admissions. *United*

*States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975) ("[C]onsiderations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases."). This is particularly appropriate when a party makes what might otherwise be deemed a judicial admission based on an incorrect understanding of the party's legal rights.

A district court has the right to relieve a party of his judicial admission if it appears that the admitting party was laboring under a mistaken legal theory or conclusion. *See*, *e.g.*, *Prickett v. Mansfield*, 257 Fed. App'x 288, 292 (Fed. Cir. 2007); *MacDonald*, 110 F. 3d at 341; *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963).

Based on ClearPlay's attorney's contemporaneous statements concerning his interpretation of *Nissim I* and its purported rejection of a representative-sample procedure, it is apparent that ClearPlay was operating under a misunderstanding of its legal rights when it made the decision to withdraw the Phase I filters. JA007498; JA007502-03; *Nissim II* Oral Argument at 20:15-20:47. Indeed, until the Court issued *Nissim II*, all parties and the district court shared the same legal

misunderstanding. Thus, *Nissim II* clarified that "[t]o the extent that the [district] court may have interpreted our opinion in *Nissim I* to preclude it from [] employing a representative sampling to determine compliance for the entire set of filters, that was error." *Nissim*, 499 F. App'x at 27-28. ClearPlay's misinterpretation of *Nissim I*—as preventing a sample set procedure—negates any intent to waive ClearPlay's rights as to all its 2000 filters.

Significant record evidence casts doubt on Nissim's argument that ClearPlay intended to admit that all of its filters do not comply with the Specifications. Thus, the district court did not abuse its discretion in denying Nissim's motion for relief on remand.

## CONCLUSION

The Court lacks subject-matter jurisdiction over this appeal. But even if the Court had jurisdiction, the correct outcome would be to affirm both of the district court's interlocutory orders denying Nissim's requests for summary relief. Nissim is not entitled to a legal pronouncement that ClearPlay has a legal duty to "use" the Specifications. The record shows that ClearPlay already uses the Specifications, and the Court has already held that the question of

ClearPlay's substantial compliance is for the factfinder to determine on a case-by-case basis. Nor did the district court err in denying Nissim's motion for relief on remand, as there is evidence showing that ClearPlay never made a judicial admission that its filters failed to comply with the Specifications. ClearPlay asks the Court to deny Nissim's appeal.

Dated: September 12, 2012

Respectfully submitted,

/s/ Eric B. Storm
Eric B. Storm
THE STORM LAW FIRM PLLC
11701 Bee Caves Rd., Suite 221
Austin, Texas 78738
(512) 505-2331
(512) 276-6677 fax

*Counsel for Appellees ClearPlay, Inc., Matthew Jarman, and Lee Jarman*

CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by THE STORM LAW FIRM, PLLC, Attorneys for Defendants-Appellees to print this document. I am an employee of Counsel Press.

On **September 12, 2013**, Counsel for Appellees has authorized me to electronically file the foregoing **Brief for Defendants-Appellees** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> JOHN C. CAREY
> CAREY RODRIGUEZ GREENBERG O'KEEFE, LLP
> 1395 Brickell Avenue, Suite 700
> Miami, FL 33131
> (305) 356-5455
> jcarey@careyrodriguez.com
> *Counsel for Plaintiff-Appellant*

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

September 12, 2013                                    /s/ Robyn Cocho
                                                     Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains <u>10,728</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word 7</u> in a <u>14</u> point <u>Century Schoolbook</u> font or

_____ The brief has been prepared in a monospaced typeface using _____in a ___ characters per inch_____ font.

<u>September 12, 2013</u>       <u>/s/ Eric B. Storm</u>
Date                  Eric B. Storm
                          *Counsel for Defendants-Appellees*